## In re NEFF.

### No. 10947.

United States Court of Appeals
Third Circuit.
Argued May 21, 1953.
Decided July 30, 1953.

---

11. See also Restatement, Torts, §§ 745–748.

Morton Stavis, Newark, N. J., for appellant.

Alexander Feinberg, Asst. U. S. Atty., Newark, N. J. (Grover C. Richman, Jr., U. S. Atty., on the brief), for appellee.

Before MARIS, STALEY and HASTIE, Circuit Judges.

MARIS, Circuit Judge.

The issue presented by this appeal is whether a witness under subpoena during a criminal trial may be compelled over her objection based on the constitutional privilege against self-incrimination to answer certain questions which she had answered a year earlier before the grand jury which indicted the defendant on trial.

The defendant, Sylvia Neff, on October 21, 1952, in response to a subpoena issued by the Government, appeared as a witness in the District Court for the District of New Jersey at the trial of the case of United States v. Anthony Valenti, also known as Valentino. Valentino was being tried under an indictment charging him with filing a false non-Communist affidavit under Section 9(h) of the Labor Management Relations Act, 29 U.S.C.A. § 159(h). The defendant, an office secretary of Local 80A, United Packinghouse Workers of America, in Camden, New Jersey, of which union Valentino was business agent, in her capacity as a notary public had taken the affidavit in question. A year earlier she had been subpoenaed to appear before the federal grand jury for the District of New Jersey which was conducting an investigation of Valentino. When the present defendant appeared before the grand jury she was asked a number of questions concerning Valentino which she answered. She was also asked as to her own membership in the Communist Party and her participation in its affairs. As a result of her testimony before the grand jury she was indicted for perjury for falsely answering three questions: namely, whether she had ever attended a meeting of the Communist Party, whether she had ever collected dues for the Communist Party and whether she had ever handled any money for the Communist Party. She was found guilty, after a trial on the charge of perjury, and sentenced on June 20, 1952, to imprisonment aggregating ten years. An appeal from her conviction is presently pending in this court.

Upon being called as a witness in Valentino's trial, the defendant after testifying she knew Valentino about 12 years and had worked for him since 1944 refused to state from whom she took direct instructions. Thereupon the jury was temporarily excused. The testimony she gave before the grand jury was read to her. Thereafter the trial judge advised her that the questions propounded to her thus far by the prosecuting attorney were not incriminating, but that even if subsequent questions could be proved to be incriminating, if they should be questions which she had previously answered before the grand jury, she had waived her right against self-incrimination as to them and he directed her to answer them. The defendant informed the trial judge that she had during the recess telephoned her attorney in Newark for advice and that he was then on his way to Camden. However, the trial judge stated that the trial could not wait and he directed the prosecuting attorney to further examine the defendant. In particular the defendant was directed by the trial judge to answer seven questions which she refused to answer upon the ground that her answers might incriminate her. The questions were these:

"Any time did you know him [Sid Stein] to be a Communist?"

"Do you know Julius Zinman?"

"Did you ever discuss the Communist Party with Mr. Valentino?"

"Were you ever a member of the Communist Party, Mrs. Neff?"

"Have you ever seen Mr. [Julius] Zinman in Mr. Valentino's office?"

"Do you know Lou Malinow?"

"Did you ever see Sid Stein in the union office?"[1]

At the close of the defendant's testimony the prosecuting attorney prepared contempt charges against the defendant. On November 28, 1952, at the hearing on these charges the record of the defendant's perjury trial was made part of the record as well as those parts of the record of the Valentino trial in which appeared the defendant's testimony and the testimony of another witness stating that Sid Stein was chairman of the South Jersey group of the Communist Party. The defendant sought to prove by this record that the individuals as to whom questions were asked of the defendant had been identified as having been members of the Communist Party. After hearing, the trial judge found that the questions asked were material and relevant to the pending issue and that the defendant, in willfully refusing to answer them, had obstructed justice and prejudiced the conduct of the case, for which she was found guilty of contempt in the presence of the court and sentenced to one year's imprisonment.

■ The defendant contends that the district court erred because the seven questions which she declined to answer were clearly within the scope of the privilege against self-incrimination which she was entitled to assert during Valentino's trial. The Government on the other hand contends that the defendant by previously testifying upon certain matters before the grand jury had waived her right to assert her privilege against self-incrimination with respect to the same matters in the subsequent trial of the indictment found by the grand jury as a result of its inquiry. The Government asserts that a witness is guilty of contempt of court when he refuses to answer questions propounded to him upon the direction of the trial judge in open court and that the court, under Section 401 of Title 18, U.S.C., is empowered to punish for the contempt. A witness' assertion of his constitutional privilege against self-incrimination, if properly claimed, cannot be contempt of court, however. The question for decision, therefore, is whether under the circumstances of this case the trial judge erred in ordering the defendant in spite of her claim of constitutional privilege to answer the questions propounded to her.

■ It is the duty of a trial judge in these circumstances to consider first the character of the questions and all the circumstances of the case.[2] In the light of recent decisions, however, it could not seriously be argued that possible answers to the questions which were put to this defendant, in the setting in which they were asked, might not be incriminating.[3] Assuming, therefore, that answers to these questions might prove incriminating, the question remains whether the defendant had waived the right to claim her consti-

1. The defendant contends, and the Government concedes, that only the first four questions had been asked and answered before the grand jury.

2. Hoffman v. United States, 1951, 341 U.S. 479, 71 S.Ct. 814, 95 L.Ed. 1118; Greenberg v. United States, 1952, 343 U.S. 918, 72 S.Ct. 674, 96 L.Ed. 1332; Singleton v. United States, 1952, 343 U.S. 944, 72 S.Ct. 1041, 96 L.Ed. 1349; Estes v. Potter, 5 Cir., 1950, 183 F.2d 865, certiorari denied 340 U.S. 920, 71 S.Ct. 356, 95 L.Ed. 664; United States v. Girgenti, 3 Cir., 1952, 197 F.2d 218; United States v. Coffey, 3 Cir., 1952, 198 F.2d 438.

3. Blau v. United States, 1950, 340 U.S. 159, 71 S.Ct. 223, 95 L.Ed. 170; Alexander v. United States, 9 Cir., 1950, 181 F.2d 480; Doran v. United States, 9 Cir., 1950, 181 F.2d 489; Kasinowitz v. United States, 9 Cir., 1950, 181 F.2d 632, certiorari denied 340 U.S. 920, 71 S.Ct. 356, 95 L.Ed. 664; Estes v. Potter, 5 Cir., 1950, 183 F.2d 865, certiorari denied 340 U.S. 920, 71 S.Ct. 356, 95 L. Ed. 664.

At the contempt hearing the trial judge made the following statement: "I think that is the reason that the questions that were propounded to Mrs. Neff became material and relevant at that point in the Valenti matter: namely, that prior testimony had elicited the fact that Julius Zinman, Sid Stein, and Lou Malinow had, at some time, been actively associated with the Communist Party and its activities in and about Camden."

tutional privilege against self-incrimination when testifying during Valentino's trial.

■ It is settled by the overwhelming weight of authority that a person who has waived his privilege of silence in one trial or proceeding is not estopped to assert it as to the same matter in a subsequent trial or proceeding. The privilege attaches to the witness in each particular case in which he may be called on to testify, and whether or not he may claim it is to be determined without reference to what he said when testifying as a witness on some other trial, or on a former trial of the same case, and without reference to his declarations at some other time or place.[4] The Government does not controvert this proposition but seeks to avoid its effect in this case by asserting that the grand jury investigation and subsequent trial of Valentino were merely two successive phases of a single proceeding so that the defendant's waiver of her privilege in the one carried through to the other. We cannot accede to this proposition, however.

■■ The grand jury is not a judicial tribunal but rather an informing or accusing body.[5] While an appendage of the court it does not conduct its proceedings judicially and when after its secret ex parte investigation it finds and returns to the court an indictment against a defendant its function with respect to that defendant is ended. It is clear, therefore, that the investigation of a grand jury is a proceeding which is wholly separate and distinct from, and of a different nature than, the subsequent trial of the defendant in the district court. It necessarily follows that a witness, such as the defendant here, who testified to a matter before the grand jury did not thereby waive her right to claim her constitutional privilege against self-incrimination as to the same subject matter when called as a witness in the subsequent trial of a person indicted by the grand jury. It has been so held by every appellate court before which the question has come.[6]

It is true, as the Government says, that this question has not heretofore been presented to a federal appellate court. But we are satisfied that the rule applied by the state courts under similar state constitutional provisions is equally applicable under the Fifth Amendment to the present defendant's case. Indeed her case is a striking illustration of the importance of the rule in preserving the constitutional privilege against self-incrimination. For between the time of the defendant's testimony before the grand jury and her claim of privilege at Valentino's trial she had been convicted of perjury before the grand jury and had been sentenced to a total of ten years' imprisonment. Thus the setting in which the questions were asked of her had greatly changed and she could well

4. Arndstein v. McCarthy, 1920, 254 U.S. 71, 41 S.Ct. 26, 65 L.Ed. 138; Poretto v. United States, 5 Cir., 1952, 196 F.2d 392; Marcello v. United States, 5 Cir., 1952, 196 F.2d 437; Cullen v. Commonwealth, 1873, 65 Va. 624; Georgia Railroad & Banking Co. v. Lybrend, 1896, 99 Ga. 421, 27 S.E. 794; Samuel v. People, 1896, 164 Ill. 379, 45 N.E. 728; Emery v. State, 1899, 101 Wis. 627, 78 N. W. 145; Miskimins v. Shaver, 1899, 8 Wyo. 392, 58 P. 411, 49 L.R.A. 831; Overend v. Superior Court, 1900, 131 Cal. 280, 63 P. 372; In re Mark, 1906, 146 Mich. 714, 110 N.W. 61; Commonwealth v. Phoenix Hotel Co., 1914, 157 Ky. 180, 162 S.W. 823; People v. Cassidy, 1915, 213 N.Y. 388, 107 N.E. 713, Ann. Cas.1916C 1009; 58 Am.Jur., Witnesses, § 99; 8 Wigmore on Evidence (3d Ed.) § 2276(4).

5. Ex parte Bain, 1887, 121 U.S., 1, 11, 7 S. Ct. 781, 30 L.Ed. 849; Commonwealth v. Woodward, 1893, 157 Mass. 516, 32 N.E. 939; Banks v. State, 1932, 185 Ark. 539, 48 S.W.2d 847, 82 A.L.R. 1051; Coblentz v. State, 1933, 164 Md. 558, 166 A. 45, 88 A.L.R. 886; State v. Lawler, 1936, 221 Wis. 423, 267 N.W. 65, 105 A.L.R. 568; Adams v. State, 1938, 214 Ind. 603, 17 N.E.2d 84, 118 A.L.R. 1095.

6. Temple v. Commonwealth, 1881, 75 Va. 892; Ex parte Sales, 1933, 134 Cal.App. 54, 24 P.2d 916; Duckworth v. District Court of Woodbury County, 1936, 220 Iowa 1350, 264 N.W. 715; Apodaca v. Viramontes, 1949, 53 N.M. 514, 212 P. 2d 425, 13 A.L.R.2d 1427. And see 8 Wigmore on Evidence (3d Ed.) § 2276(4).

have had apprehensions as to the incriminating effect of her requested testimony which she did not have on the earlier occasion. And these apprehensions were certainly not lessened by the refusal of the trial judge to give her time to consult counsel with respect to her rights as a witness.

We conclude that the defendant was entitled to claim her constitutional privilege against self-incrimination with respect to the questions which the district court directed her to answer. It follows, therefore, that the defendant in declining to answer these questions was not in contempt of court.

The judgment of the district court will be reversed and the cause will be remanded with directions to enter a judgment of acquittal.